**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Tioga RV & Trailer Park, Inc., | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION FOR JUDGMENT ON THE** |
| Plaintiff, | ) | **PLEADINGS** |
| | ) | |
| vs. | ) | Case No. 1:17-cv-94 |
| | ) | |
| Nautilus Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's "Motion for Judgment on the Pleadings" filed on November 3, 2017.  See Docket No. 13.  The Plaintiff filed a response in opposition on December 8, 2017.  See Docket No. 18.  The Defendant filed a reply on December 22, 2017.  See Docket No. 19.  For the reasons set forth below, the Defendant's motion is granted.

I.    **BACKGROUND**

This case involves an insurance coverage dispute arising out of an underlying lawsuit filed by PurCo Fleet Services, Inc. ("PurCo") against Tioga RV & Trailer Park, Inc. ("Tioga") in state district court in the Northwest Judicial District in Williams County, North Dakota ("PurCo lawsuit").  On or about June 28, 2013, PurCo filed an action against Tioga, alleging Tioga wrongfully seized and refused to return twelve recreational vehicles ("RVs"), owned by Access RV, Inc. ("Access RV").  See Docket No. 3-1.  Access RV assigned their claims to PurCo, and the Purco lawsuit asserted claims against Tioga for replevin, conversion, and unjust enrichment.  See Docket No. 3-1.

The PurCo complaint asserted that on July 12, 2011, Richard D. Nuffer and/or his entity, Remote Site Services, rented twelve RVs from Access RV.  See Docket No. 3-1, p. 2.  Each of the RVs, including all fixtures, accessories, parts, and appurtenances, were owned by Access RV.

1

Nuffer and/or Remote Site Services was obligated to pay monthly rental fees to Access RV pursuant to a renter's agreement.  See Docket No. 3-1, p. 3.  Nuffer and/or Remote Site Services took possession of the RVs and placed them in a trailer park owned by Tioga in Williams County, North Dakota.  For approximately five months, Nuffer and/or Remote Site Services performed their obligations under the renter's agreement; however, Nuffer and/or Remote Site Services stopped making the required rental payments under the renter's agreement.  At or about the same time, Tioga claimed Nuffer and/or Remote Site Services had defaulted on obligations owed to Tioga, and Tioga seized the RVs located at Tioga's trailer park.  On or about March 23, 2012, Tioga sent Access RV a letter informing Access RV that Tioga had seized the RVs in order to cure Nuffer and/or Remote Site Services' alleged default to Tioga.  Access RV informed Tioga that Tioga's seizure of the RVs was wrongful and demanded Tioga immediately release the RVs to Access RV, and Tioga refused.

On April 30, 2012, Access RV went to Tioga's trailer park and attempted to repossess some of the RVs.  See Docket No. 3-1, p. 4.  Tioga refused to release the RVs and called the police.  The police informed Tioga it was wrongfully detaining the RVs and allowed Access RV to repossess them.  Access RV was only able to repossess four of the twelve RVs that day.

The following week, Access RV returned to Tioga's trailer park with additional equipment and repossessed seven of the eight remaining RVs.  See Docket No. 3-1, p. 4.  Before Access RV was able to repossess the eighth RV, it was removed from Tioga's trailer park.  Access RV filed a police report for the missing RV, and has never been able to locate or recover the missing RV.

Nautilus Insurance Company ("Nautilus") issued a commercial general liability insurance policy to Tioga ("the Policy") for a policy period of July 26, 2011, to July 26, 2012.  Tioga tendered the PurCo lawsuit to Nautilus for defense and indemnification, asserting its purported rights under the Policy.  Nautilus denied Tioga's claim for coverage, asserting the claims in the PurCo lawsuit

did not trigger coverage under the Policy, and even if the Policy had been triggered, several exclusions in the Policy barred coverage.

On or about April 18, 2017, Tioga filed suit against Nautilus in state district court in the Northwest Judicial District in Williams County, North Dakota, for declaratory judgment, breach of contract, bad faith, and unfair and deceptive insurance acts and practices.  See Docket No. 1-1. Nautilus removed the case to federal court on May 9, 2017.  See Docket No. 1.  On May 16, 2017, Nautilus filed an answer and counterclaim for declaratory judgment seeking a finding that it owes no duty to defend or indemnify Tioga for the claims asserted in the PurCo lawsuit.

On November 3, 2017, Nautilus filed a motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  See Docket No. 13.  On December 8, 2017, Tioga filed a response in opposition.  See Docket No. 18.  On December 22, 2017, Nautilus filed a reply.  See Docket No. 19.


## II.   LEGAL ANALYSIS

Rule 12(c) of the Federal Rules of Civil Procedure establishes that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved, and the movant is entitled to judgment as a matter of law.  Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002).  When presented with a motion for judgment on the pleadings, a district court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006).  The standard for judgment on the pleadings is the same as that for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).

> When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider "some materials that are part of the public record or do not contradict the complaint," as well as materials that are "necessarily embraced by the pleadings."

Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citations omitted).

In order to determine whether the Policy provides coverage to Tioga for the PurCo lawsuit, Nautilus maintains that the Court only needs to compare the allegations contained in the PurCo complaint to the language of the Policy. See Docket No. 15. Specifically, Nautilus argues that intentional conduct, like that alleged against Tioga in the PurCo lawsuit, does not constitute an "occurrence" as defined by the Policy.

Ordinarily, a liability insurer's obligation to defend its insured is measured by the insurance policy's terms and the pleading of the claimant who sues the insured. Tibert v. Nodak Mut. Ins. Co., 2012 ND 81, ¶ 30, 816 N.W.2d 31. If the allegations of the claimant's complaint could support recovery upon a risk covered under the insurer's policy, a liability insurer has a duty to defend its insured. Id. The North Dakota Supreme Court has formulated the duty to defend to require a liability insurer to defend an underlying action against its insured if the allegations in the complaint give rise to potential liability or a possibility of coverage under the insurance policy. Schultze v. Continental Ins. Co., 2000 ND 209, ¶ 8, 619 N.W.2d 510; National Farmers Union Property and Cas. Co. v. Kovash, 452 N.W.2d 307, 309 (N.D. 1990) (insurance policy and the allegations in a third-party complaint against the insured control whether an insurer has a duty to defend).

When several claims are made against the insured in the underlying action, the insurer has a duty to defend the entire lawsuit if there is potential liability or a possibility of coverage for any one of the claims. Tibert, 2012 ND 81 at ¶ 30. Any doubt about whether a duty to defend exists must be resolved in favor of the insured. Id. at ¶ 31. When there is doubt as to whether the insured

4

party's complaint states facts sufficient to bring the injury within the coverage of the insurance policy, and the claim "may or may not be covered by the policy," the insurer has a duty to defend. Id.

The interpretation of an insurance policy is a question of law. Wisness v. Nodak Mut. Ins. Co., 2011 ND 197, ¶ 5, 806 N.W.2d 146. Courts are to first look to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. Id. If coverage hinges on an undefined term, the plain, ordinary meaning of the term is applied. Id. Courts are not to rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage, and courts are not to strain the definition of an undefined term in order to provide coverage for the insured. Id.

The Policy states, in pertinent part:

This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .

See Docket No. 15-2, p. 10. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See Docket No. 15-2, p. 23. The term "accident" is not further defined in the Policy. However, courts analyzing commercial general liability insurance policies and applying North Dakota law have defined "accident" as "happening by chance, unexpectedly taking place, not according to the usual course of things." K & L Homes, Inc. v. American Family Mut. Ins. Co., 2013 ND 57, ¶ 11, 829 N.W.2d 724 (quoting Wall v. Pennsylvania Life Ins., 274 N.W.2d 208, 216 (N.D. 1979)).

The PurCo complaint alleges Tioga:

- "seized the RVs located at the Trailer Park"
- "seized the RVs despite the fact that the RVs did not belong to [Nuffer and/or Remote Site Services] and were instead owned by Access, which had a superior claim to immediate possession of the RVs;"

- "refused to release or return the RVs and unlawfully detained the RVs at its Trailer Park" after being informed "that its seizure of the RVs was wrongful;"
- "refused to release the RVs to Access and called the police" when Access traveled to the Trailer Park on April 30, 2012, and attempted to repossess some of the RVs;" and
- "wrongfully deprived Access of the RVs and the Missing RV with the intent to exercise control over and interfere with the use of the RVs and the Missing RV to such a degree as to require a forced sale of Access's interests in the Missing RV to Tioga."

See Docket No. 3-1.  Nautilus argues the allegations in the PurCo complaint demonstrate that Tioga's seizure of twelve RVs and refusal to return those RVs was intentional and does not constitute an "accident" that would equate with an "occurrence" under the Policy.  In response, Tioga argues it denied some of those allegations in its answer and counterclaim, and that "[a]llegations in a complaint, are just that, allegations, and do not establish facts."  See Docket No. 18, p. 7.  However, this is not the appropriate standard to apply.  Rather, an insurer's obligation to defend its insured is measured by the terms of the insurance policy and the pleading of the claimant who sues the insured.  See Tibert, 2012 ND 81, at ¶ 30.

Nautilus argues coverage under the Policy is not triggered because the allegations in the PurCo complaint only allege intentional conduct by Tioga.  See Docket No. 19.  Nautilus maintains that each of the allegations in the PurCo complaint involve Tioga's intent to deprive Access RV of access to its RVs, and an intent to deprive is not an "accident."  Nautilus also notes Tioga fails to point to a single allegation in the PurCo complaint that would suggest a covered "occurrence" or "accident."

Several courts have concluded a volitional act does not constitute an "accident" as defined in insurance policies.  See Rolette County v. Western Casualty & Sur. Co., 452 F. Supp. 125, 130 (D.N.D. 1978) (claim against sheriff for deprivation of constitutional rights was not an "occurrence" because the acts of seizing mobile home and automobile "were clearly intentional,

not accidental"); <u>In re Russell</u>, 36 Fed. Appx. 115, 117 (4th Cir. 2002) (complaint asserted intentional acts of conversion, rather than covered occurrences); <u>Fidelity and Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.</u>, 25 F.3d 484, 488 (7th Cir. 1994) (intentional conduct is not "accidental" and thus not an "occurrence");  <u>Emcasco Ins. Co. v. CE Design, Ltd.</u>, 784 F.3d 1371, 1379-80 (10th Cir. 2015) (insurance policy did not cover claims against insured for intentional conversion).

The Court finds the allegations in the PurCo complaint clearly outline that Tioga intended to seize and possess the RVs, and Tioga's actions, as alleged in the PurCo complaint, were clearly not accidental.  Thus, the Court finds the allegations in the PurCo complaint only asserted intentional acts by Tioga, and the claims and damages alleged did not constitute an "occurrence" or "accident" under the Policy.  Therefore, the Court finds as a matter of law that Nautilus does not have a duty to defend Tioga.

### III.      CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. The Defendant's motion for judgment on the pleadings (Docket No. 13) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 7th day of June, 2018.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, Chief Judge
> United States District Court